UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | Criminal No. 16-cr-144-1 (TSC) |
| | ) | |
| **DEENVAUGHN ROWE**, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

This matter is before the court on Deenvaughn Rowe's ineffective assistance of counsel claim. Def's Notice of Filing of Mem. of Law ("Def.'s Mem."), ECF No. 141. Rowe claims his trial counsel was ineffective for failing to (i) investigate, (ii) call witnesses, and (iii) review all the discovery with him. Def's Br. in Supp. of Ineffective Assistance of Counsel Claim ("Def.'s IAC Br."), ECF No. 186 at 2. Upon consideration of the parties' filings, the testimony and argument at the evidentiary hearing, as well as the trial record, the court will DENY Rowe's claim for the reasons stated below.

**I.    BACKGROUND**

On August 16, 2016, Rowe and his two co-worker co-defendants were indicted by a federal grand jury. Indictment, ECF No. 1. Rowe, who worked as a manager at the U.S. Postal Service ("USPS"), was charged with four counts: (i) conspiracy to commit bribery in violation of 18 U.S.C. § 371; (ii) bribery in violation of 18 U.S.C. § 201(b)(2); (iii) and (iv) conspiracy to distribute, dispense, and possess with intent to distribute marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 846. The trial evidence showed that Rowe would use "his USPS computer to track . . . packages from the west coast" and "would receive cash from the driver of a white Range

1

Rover in exchange for . . . packages of interest." *United States v. Norman*, 926 F.3d 804, 808 (D.C. Cir. 2019). During the relevant conspiracy period, "Rowe obtained considerable otherwise unexplained wealth." *Id*. Even though his net income, "after various deductions and child support, was $ 16,000 per year," Rowe had "$47,960" in "unexplained cash deposits," "$7,000 in unexplained cash equivalent deposits," "3,600 in cash in [his] Mercedes[,] and $6,000 in cash in the inner pocket of a jacket in his closet." *Id*. Following a six-day trial, a jury found Rowe guilty of all four counts. On July 21, 2017, this court sentenced him to ninety-seven months of incarceration and forty-eight months of supervised release. Judgment, ECF No. 116 at 2–3.

Rowe appealed his conviction, claiming several errors of law. The D.C. Circuit affirmed his conviction, finding "that none of the allegations of error have merit." *Norman*, 926 F.3d at 807. The Circuit remanded Defendant's ineffective assistance claim for further proceedings, *id*, and the court held an evidentiary hearing on October 15, 2021.

Rowe and his trial counsel William Brennan testified at the evidentiary hearing. Rowe testified that he and Brennan discussed hiring an investigator, but that Brennan ultimately decided not to do so. Evid. Hr'g. Tr., ECF No. 182 at 14:16–23. Rowe said he had expected that an investigator would (i) look into "exactly what facility and location [of] each computer" on which inculpatory evidence was found to show that Rowe was not in control of those computers, and (ii) "go through [his] bank and transactions" to show that Rowe's outside income was less than the Government alleged. *Id*. at 15:5–22. Rowe also faulted Brennan for not calling five witnesses at trial—Shirley Jackson, Robert Steele, April Crankow, Ebboni Clark, and Angel Saunders (Brennan interviewed Jackson and Clark). *Id*. at 16:21–17:10. Rowe claims Clark could have testified that Rowe won $20,000 in a football gambling pool, *id*. at 21:2–4, but Rowe did not provide the substance of the other witnesses' expected testimony. Rowe also testified

2

that he "reviewed some of [the] discovery against him" but was shown "no smoking gun." *Id*. at 17:23–18:12. Despite his review of the discovery, Rowe said he was "surprised" at trial when the government introduced evidence of phones found in his house and car, text messages between himself and a co-defendant, handwritten notes found in his car, and certain screenshots. *Id*. at 18:14–19:4.

Brennan, who was retained by Rowe, testified that he has practiced law for forty-five years, mostly as a criminal defense attorney, and has extensive federal criminal trial experience. *Id*. at 22:10–24; Gov't. Ex. 1. Brennan testified that he "talked at length with [his] client," "examined the government's discovery," and "made decisions" regarding putting on a defense. Evid. Hr'g. Tr. 27:20-22.

Brennan further testified that he considered hiring an investigator to verify Rowe's claimed gambling winnings but decided against it because Rowe did not provide "any more information" and Brennan concluded that the investigation was not "going to materialize to anything of substance." *Id*. at 28:9–16, 28:23–29:1. Brennan said Rowe did not provide him with the names of people who could corroborate that he was a "regular" at the racetrack, and he could not provide "IRS payouts"—or "a thing from the IRS"—to show he "w[o]n big" from gambling. *Id*. at 28:9–30:6. Brennan said he "talked to a witness" "about a football pool," but did not pursue that line of inquiry because it "wasn't the kind of money that we needed to show, just sort of very minor money." *Id*. at 30:7–18. To explain Rowe's outside income, Brennan spoke to a "Mr. Harris", who was a purported "financial partner" of Rowe's and involved in "a restaurant called the Pelican Rum." *Id*. at 30:19–31:16. Brennan ultimately decided not to call Harris as a witness or subpoena him because he "didn't think [Harris] would be a helpful witness

3

[given that] he seemed very reluctant to come to court and say" how much money he and Rowe were making through their business ventures. *Id*. at 31:12–24.

Brennan also testified that he interviewed Jackson and Clark regarding whether anyone shared Rowe's computer passwords and who had access to Rowe's computer, *id*. at 32:8–13, but decided not to call them as witnesses because neither could establish that anyone had accessed Rowe's computer. *Id*. at 32:14–33:5.

Brennan testified that he visited Rowe in jail at least twelve times before the trial began to discuss the case and develop a defense. *Id*. 25:25–26:13, 27:12–16.[1] Over the course of his investigation and discussions with Rowe, Brennan concluded that it was too risky to put on a defense because the "government has the burden of proof" and it did not make sense to "try[] to prove something . . . [he] couldn't probably prove." *Id*. at 34:20–36:7. Brennan testified that he thought he reached a "consensus" with Rowe not to call any witnesses, that he reiterated this strategy to Rowe at various points throughout the trial, and that Rowe did not "push back" or suggest another approach. *Id*. at 35:13–39:20.

Brennan said he had "all the paper discovery printed out . . . and reviewed it with Mr. Rowe" and he "watched surveillance videos" with Rowe. *Id*. at 41:1–9. However, when the court asked Brennan if "there [was] evidence that [he] believed wasn't relevant and therefore didn't show to Mr. Rowe," Brennan said, "the answer is kinda sorta yes." *Id*. at 54:1–12. Explaining his answer, Brennan said "I mean there's a lot of electronic evidence that did not

---

[1] Brennan also testified that he visited Rowe after trial began, but he did not have access to records showing those visits. *Id*. at 27:11–16.[1]

4

involve Mr. Rowe. I offered to sit with him, but we did not look at empty mail trucks and the pass-offs in the street."[2] *Id*. at 54:9–12.

II. **DISCUSSION**

"Ineffective assistance [of counsel] occurs when an attorney makes errors that (1) are 'so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment' and (2) that deficient performance was prejudicial, i.e., 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Norman*, 926 F.3d at 812 (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). As to the first prong, courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689. The second prong "requires the defendant to demonstrate that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *United States v. Eli*, 379 F.3d 1016, 1019 (D.C. Cir. 2004) (quoting *Strickland*, 466 U.S. at 694). Ultimately, a defendant "must establish that 'counsel's conduct so undermined the proper functioning of the adversarial process' that the outcome cannot be relied on as just." *United States v. Roberts*, 268 F.Supp.3d 105, 113 (D.D.C. 2017) (quoting *Strickland*, 466 U.S. at 686).

First, Rowe argues that Brennan failed to properly investigate the case because he did not (i) investigate Rowe's gambling habits, Def.'s IAC Br. at 8, or (ii) hire an investigator, Def.'s Mem. at 4. Given Brennan's testimony that he spoke with Rowe about ways to verify he was a "regular" at the racetrack and that he spoke to at least one witness about the "football pool,"

---

[2] At trial, the government offered considerable testimony, and video and photographic evidence relating to the charges against Rowe's co-defendants, who were responsible for delivering the packages containing the drugs.

Evid. Hr'g. Tr. 28:9–30:18, the court rejects this argument. With regard to hiring an investigator, Brennan testified that he considered hiring an investigator to look into Rowe's gambling income, but he was unable to verify that any winnings were substantial or locate a witness who could corroborate that defense. *Id*. at 28:2–31:24. Assessing Brennan's decisions for "reasonableness" and "applying a heavy measure of deference to [his] judgment," the court cannot conclude that Brennan's performance was deficient because he decided not to hire an investigator. *United States v. Mohammed*, 863 F.3d 885, 890 (D.C. Cir. 2017 (citing *United States v. McDade*, 699 F.3d 499, 506 (D.C. Cir. 2012)); *Cf. Hoover-Hankerson v. United States*, 792 F. Supp. 2d 76, 84 (D.D.C. 2011) (holding that counsel's decision not to hire a handwriting expert "falls well within the range of reasonable professional assistance").

      Second, Rowe argues that Brennan's decision to not interview several potential witnesses and not "to present any defense[,] left the [D]efendant defenseless." Def.'s IAC Br. at 8–9 (internal quotation marks omitted). But Brennan testified—and Rowe did not dispute—that he did speak to at least three potential witnesses, that Rowe agreed not to call any witnesses, and that they discussed this decision up until the close of the government's case, Evid. Hr'g. Tr. 35:13–39:20. Brennan's strategic decision not to call any witnesses does not amount to a professional error. *See United States v. Catlett*, 97 F.3d 565, 570 (D.C. Cir. 1996) (quoting *Strickland*, 466 U.S. at 690) ("'[S]trategic choices made after a thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'"). Furthermore, although Brennan admitted that he did not interview three of the five witnesses Rowe identified as potentially supportive, Evid. Hr'g. Tr. 33:6–19, Rowe did not say how testimony from those witnesses would have led to a different outcome in this case. Consequently, the court cannot

6

conclude that Brennan's failure to interview the three witnesses were "errors . . . so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687

Third, Rowe argues that Brennan's failure to review all the discovery with him constitutes *per se* ineffective assistance of counsel. Def.'s IAC Br. at 9. While the Supreme Court has held that a "counsel's failure to conduct any discovery" is "unreasonable" and "contrary to professional norms," *Kimmelman v. Morrison*, 477 U.S. 365, 385 (1986), Rowe provides no case law to support his argument that counsel's failure to review all discovery with him amounts to ineffective assistance. Instead, he cites two cases in which courts actually rejected defendants' ineffective assistance arguments because any alleged failure to review discovery with the defendant was not prejudicial, Def.'s Reply, ECF No. 188 at 4–5 (citing *United States v. Shark*, 158 F. Supp. 2d 43, 53 (D.D.C. 2001), *aff'd*, 60 F. App'x 333 (D.C. Cir. 2003) and *United States v. Magruder*, No. CR 19-203 (CKK), 2020 WL 4049919, at *4 (D.D.C. July 20, 2020)). While Rowe testified that he was "surprised" by some of the evidence presented against him at trial, *id*. at 18:14–19:4, he did not specifically identify what discovery Brennan did not review with him. Nor has Rowe demonstrated how his review of all the discovery would have led to a different outcome in his trial. Brennan admitted to not having reviewed "electronic evidence that did not involve Mr. Rowe," including discovery pertaining to his co-defendants. *Id*. at 54:9–12. Rowe's review of that evidence would not have changed the outcome of this case, and Rowe's argument therefore cannot satisfy the second *Strickland* prong.

At trial, the government's evidence against Rowe and his co-defendants was extensive. It included surveillance videotapes, text messages between Rowe and his co-defendants, Rowe's bank statements, audiotape of Rowe's conversations, expert testimony regarding the use of mail to effectuate drug distribution, positive lab tests for marijuana in USPS packaging that Rowe

handled, and surveillance captured queries and searches from Rowe's workstation computer showing that he was monitoring and intercepting mail containing drugs. With such strong evidence against him, and despite Brennan's decision not to hire an investigator or call certain witnesses, Rowe has not demonstrated that "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Eli*, 379 F.3d at 1019 (quoting *Strickland*, 466 U.S. at 694). Because Rowe has failed to do so, his ineffective assistance of counsel claim fails.

### III. CONCLUSION

For the reasons set forth above, Rowe's ineffective assistance of counsel claim is hereby DENIED.

Dated: January 19, 2023

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Court Judge